Corresponds to AO 241
Petition for a Writ of Habeas Corpus Under 28 U.S.C. §
2254 (Rev.9/18)

Page 2 of 10

FILED 10 OCT '18 13:25 USDC-ORP    6:18 - CV - 1798 - SB

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS
### BY A PERSON IN STATE CUSTODY

| United States District Court | District of Oregon | |
|---|---|---|
| Name (under which you were convicted): David Benjamin Long | | Docket or Case No.: 13C45165 |
| Place of Confinement: Marion County Corrections | Prisoner (SID) No.: 15641026 | |
| Petitioner (include the name under which you were convicted) | Respondent (authorized person having custody of petitioner) | |
| David Benjamin Long | v. Marion County Corrections | |
| The Attorney General of the State: | | |

Petitioner on Probation In Marion County

### CONVICTION UNDER ATTACK

1. Name and location of court that entered the judgment of conviction you are challenging:

   Marion County Circuit Court Salem, Oregon

2. Criminal docket or case number (if known): _____

3. (a) Date of judgment of conviction (if known): 5-9-2014

   (b) Date of sentence: 5-9-2014

4. Length of sentence: 5 years of Probation and a lifetime of being known as a sex offender.

5. Identify all crimes for which you were convicted and sentenced in this case:

   Encouraging Child Sex abuse (1 count)

6. What was your plea? (Check one)

   ☐ Not Guilty          ☒ Guilty

   ☐ Nolo Contendere (No Contest)    ☐ Insanity Plea

   If you entered a guilty plea(s), list what crimes you pleaded guilty to, and what crimes you did not plead guilty to:

   Encouraging Child Sex Abuse I (one count)
   Using a child in Display of sexually explicit conduct (one count) dismissed w/plea bargain

7. If you pleaded not guilty, what kind of trial did you have? (Check one)

   ☐ Jury          ☒ Judge Only

8. Did you testify at trial?

   ☐ Yes          ☒ No    I didn't have a chance to testify

80321

Corresponds to AO 241
Petition for a Writ of Habeas Corpus Under 28 U.S.C. §
2254 (Rev.9/18)

## EXHAUSTION OF STATE REMEDIES

### *DIRECT APPEAL*

9.      Did you directly appeal from the judgment of conviction?

☐ Yes                                    ☒ No
                                         *see #12*

a.      Name of court:_____

b.      Docket or case number (if known):_____

c.      Result:_____

d.      Date of result and citation (if known):_____

e.      Grounds raised:

        _____
        _____
        _____
        _____
        _____

10.     Did you seek further review of the decision on appeal by a higher state court?

☐ Yes                                    ☐ No

a.      Name of court:_____

b.      Docket or case number (if known):_____

c.      Result:_____

d.      Date of result and citation (if known):_____

e.      Grounds raised:

        _____
        _____
        _____
        _____

11.     Did you file a petition for certiorari in the United States Supreme Court?

☐ Yes                                    ☐ No

Corresponds to AO 241
Petition for a Writ of Habeas Corpus Under 28 U.S.C. §
2254 (Rev.9/18)

Page 4 of 10

    a.    Docket or case number (if known): _____

    b.    Result: _____

    c.    Date of result and citation (if known): _____

    d.    Grounds raised:

        _____

        _____

        _____

        _____

        _____

12.    If you did not directly appeal from the judgment of conviction, explain briefly why you did not:

    Because I was advised to File for Post Conviction relief
and told this was the First step to seek relief.

**POST-CONVICTION RELIEF**

13.    Did you file a petition for state post-conviction relief?

    ☒ Yes        ☐ No

    a.    Name of court: Marion County Circuit Court

    b.    Docket or case number (if known): _____

    c.    Nature of proceeding: _____

    d.    Did you receive an evidentiary hearing?

    ☐ Yes        ☒ No

    e.    Result: Denied.

    f.    Date of result and citation or case number (if known): _____

    g.    Grounds raised:

    The Judge said my plea bargain was not coercive
because prison was an option either way. That isnt
accurate because the Judge decided I was guilty, before
the court had a chance to hear my defense and
Scared me into accepting the plea.

14.    Did you appeal the result of your state post-conviction case?

    ☒ Yes        ☐ No

a.  Name of court: *Oregon Court of Appeals*

b.  Docket or case number (if known): _____

c.  Result: *Affirmed*

d.  Date of result and citation (if known): *12-28-17*

e.  Grounds raised:
    *Conviction Affirmed without opinion*
    _____
    _____
    _____
    _____

15.  Did you seek further review of the decision on appeal by a higher state court?

    ☒ Yes                              ☐ No

a.  Name of court: _____

b.  Docket or case number (if known): _____

c.  Result: *Denied*

d.  Date of result and citation (if known): _____

e.  Grounds raised:
    *I'm not sure. I don't even think the court
    looked at my case.*
    _____
    _____
    _____

16.  If you did not appeal from the adverse decision in your state post-conviction case, explain briefly why you did
    not:
    _____
    _____
    _____
    _____
    _____

## GROUNDS FOR RELIEF

17.  For this petition, state *concisely* every ground on which you claim that you are being held in violation of the
    Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds.
    State the facts supporting each ground.

    **CAUTION: In order to proceed in the federal court, normally you must exhaust (use up) your available
    state court remedies on each ground on which you request action by the federal court. Also, if you fail to
    set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later
    date.**

    For your information, the following is a list (a-j) of the most frequently raised grounds for relief in habeas
    corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief.
    You may raise grounds other than those listed.

a. Conviction obtained by plea of guilty that was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.
b. Conviction obtained by use of coerced confession.
c. Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
d. Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
e. Conviction obtained by a violation of the privilege against self-incrimination.
f. Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
g. Conviction obtained by a violation of the protection against double jeopardy.
h. Conviction obtained by action of a grand or petit jury that was unconstitutionally selected and impaneled.
i. Denial of effective assistance of counsel at trial or on appeal.
j. Denial of right of appeal.

A. **Ground One**:

Actual Innocence. I can prove that I actually did not commit a crime

**Supporting FACTS (state *briefly* without citing cases or law)**:

I have included research that explains and refutes every accusation made against me by the State of Oregon. See memorandum. It is too complex to explain in this small of a space

B. **Ground Two**:

Judge violated my due process rights at my trial Before the court had heard my defense, he decided I was guilty and told my attorney to urge me to take a plea.

**Supporting FACTS (state *briefly* without citing cases or law)**:

The court records should show that a conversation took place between the judge, Courtland Geyer and my attorney, Gig Wyatt. The way I understood it, the judge was going to find me guilty regardless, and that it didn't matter whether or not I could prove my innocence. The court records will also reveal that only a tiny part of the defense had been mounted (1 witness) IF I had been able to proceed with my defense that would be in the record.
     This is also explained in detail in my memorandum

Corresponds to AO 241
Petition for a Writ of Habeas Corpus Under 28 U.S.C. §
2254 (Rev.9/18)

Page 7 of 10

**C.    Ground Three:**

_____

_____

_____

**Supporting FACTS (state _briefly_ without citing cases or law):**

_____

_____

_____

_____

_____

_____

_____

_____

_____

**D.    Ground Four:**

_____

_____

_____

**Supporting FACTS (state _briefly_ without citing cases or law):**

_____

_____

_____

_____

_____

_____

_____

_____

## OTHER INFORMATION

18.    Please answer these additional questions about the petition you are filing:

a.    Have all grounds for relief that you have raised in this petition been presented to the highest state court
having jurisdiction?

☒ Yes                              ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for
not presenting them:

_____

_____

_____

_____

_____

Corresponds to AO 241
Petition for a Writ of Habeas Corpus Under 28 U.S.C. §
2254 (Rev.9/18)

Page 8 of 10

b.    Is there any ground in this petition that has not been presented in some state or federal court? If so, indicate which ground or grounds have not been presented, and state your reasons for not presenting them:

_____
_____
_____
_____
_____
_____

19.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, state or federal, for the judgment you are challenging here?

☐ Yes               ☒ No

If the answer is "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised:

_____
_____
_____
_____
_____
_____

20.    Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

a.    At preliminary hearing:
Gig Wyatt    Harris, Wyatt + Amala, LLC
5778 Commercial St SE Salem, OR 97306
503-378-7744

b.    At arraignment and plea:
Gig Wyatt

c.    At trial:
Gig Wyatt

d.    At sentencing:
Gig Wyatt

e.    On appeal:
Jedediah Peterson O'Connor Weber LLC
1500 SW First Ave Suite 1090 Portland, OR 97201
503-226-0923

f.    In any post-conviction proceeding:
Noel Grefenson
1415 Liberty St SE Salem, OR 97302
503-371-1700

I need to be appointed an attorney for this petition but there isn't any place on the form to indicate that.

Corresponds to AO 241
Petition for a Writ of Habeas Corpus Under 28 U.S.C. §
2254 (Rev.9/18)

Page 9 of 10

g.      On appeal from any adverse ruling in a post-conviction proceeding:

_____

_____

21.     Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?

☐ Yes                               ☒ No

a.      If yes, in what court was the prior action filed? _____

b.      What was the prior case number? _____

c.      Was the prior action:               ☐ Decided on the merits, or

                                        ☐ Dismissed on procedural grounds

d.      Date of decision: _____

e.      Are there any issues in this petition raised in the prior petition?

☐ Yes                               ☐ No

f.      If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this successive petition?

☐ Yes*                              ☐ No

        *If the answer is "Yes," you *must* attach a copy of the order received from the Ninth Circuit Court of

        Appeals.

22.     Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

☐ Yes                               ☒ No

a.      If so, give the name and location of the court that imposed the sentence to be served in the future:

_____

b.      Give the date and length of sentence to be served in the future:

_____

_____

c.      Have you filed, or do you contemplate filing, any petition attacking the judgment that imposed the sentence to be served in the future?

☐ Yes                               ☐ No

23.   TIMELINESS OF PETITION:  If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition:

It ~~still~~ hasn't been a year yet.

_____

Before you decide to accept or deny my petition, please read my memorandum to support any petition for a writ of habeas corpus. It is vitally important that the court see this.

24.   Date you are mailing (or handing to correctional officer for mailing) this petition to the Court:*

10-10-2018

_____

**WHEREFORE**, petitioner prays that the Court will grant such relief to which he or she may be entitled in this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a person in state custody.

_____
Signature of Attorney (if any)

### DECLARATION UNDER PENALTY OF PERJURY

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

10-10-18
Date

David B Long
Signature of Petitioner

David Long
PO Box 13856
Salem, OR 97309
(971) 388-5663

* As noted in the instructions to this form (at #8), if you are incarcerated at Snake River Correctional Institution, you must comply with the requirements of the E-Filing Pilot posted at the institution and set forth in Standing Orders 2017-9 and 2018-5.  Accordingly, you must submit your filings in this case to Snake River Correctional Institution staff for scanning and electronic submission, instead of mailing the filings using the U.S. Postal Service.  Please indicate the date you submitted this petition to Snake River Correctional Institution staff for scanning and electronic submisstion, if you are incarcerated there.

Writ No. 222074-C

EX PARTE        )
DAVID BENJAMIN LONG   ) U. S. DISTRICT COURT, NINTH CIRCUIT
            ) PORTLAND, OREGON
            )
   Applicant      )
_____)

MEMORANDUM OF LAW OF APPLICANT IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS

**LOCAL COUNSEL:**  **JEDEDIAH PETERSON**
         **1500 SW First Ave**
         **Suite 1090**
         **Portland, OR 97201**
         **(503) 226-0923**

         **Attorney for the applicant David Long in
         Oregon appellate courts**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

I. STATE OF OREGON v. LONG

    A. STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.  BACKGROUND OF COUNT I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    C.  MR. LONG'S ACTUAL INNOCENCE DEFENSE AGAINST COUNT I . . . . 1

    D.  BACKGROUND OF COUNT II  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    E. MR. LONG'S ACTUAL INNOCENCE DEFENSE AGAINST COUNT II . . . . 2

II. MR. LONG'S CONSTITUTIONAL DEFENSE . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV. BIBLIOGRAPHY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V. CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

**Page**

## Oregon Constitution

Oregon Constitution Bill of Rights Article I Section 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Oregon Constitution Bill of Rights Article I section 23 . . . . . . . . . . . . . . . . . . . . . . . . .

## United States Constitution

United States Constitution Article I. Sec 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## Cases

State of Oregon v. Johnny Lee Evans, 37 P.3d 272 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

State of Oregon v. Meyer, 852 P.2d 879 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

State of Oregon v. Peter John Zielinski, OR. App. A155888 (2017) . . . . . . . . . . . . . . . . . . . . . . 9

Shoemaker v. Taylor, No.11-56476 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

United States of America v. Alan Lee Amirault, 224 F.3d 9 (1st Cir. 1999) . . . . . . . . . . . . . . . . . 7

United States of America v. Robert S. Dost, 636 F. Supp. 828 (1986) . . . . . . . . . . . . . . . . . . . . 5, 10

United States of America v. Rudy Frabizio, 463 F. Supp.2d 11 (2006) . . . . . . . . . . . . . . . . . . . . 6, 7

"United States of America. v. Knox" (1994). 1994 *Decisions*. 41. . . . . . . . . . . . . . . . . . . . . . . . 7

United States of America v. Robert David Villard, 885 F.2d 117, 3rd Cir. (1989) . . . . . . . . . . 3, 6, 7

## Statues

Or. Rev. Stat. §163.670 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2

Or. Rev. Stat. § 163.684 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## Judicial code

Oregon Judicial Code JR 2-102a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# I. STATE OF OREGON v. LONG (2014) 13C45165

## A. Statement of the case

In August 2013, David Long was charged with using a child in display of sexually explicit conduct for making a video of a toddler holding an adult toy. He was also charged with encouraging sex abuse I for taking pictures of the same toddler nude, sitting on the toilet. Long was reported to the police by a neighbor and subsequently arrested. He was held at Marion County Correctional Facility in Salem, Oregon for four months. He got out on bail a week before Christmas. On May 9th, 2014, Long's trial was held at the Marion Courthouse.

During trial, Long was not allowed to properly defend himself and was intimidated into accepting a plea bargain that he did not want. In lieu of the plea bargain, count I was dropped and Long was convicted on count II, encouraging child sex abuse I. He was sentenced to 60 months of supervision with Marion County Corrections and required to register as a sex offender.

Since his conviction, Long has unsuccessfully sought post conviction relief, and appeals with the Oregon Court of Appeals and the Oregon Supreme Court. He now presents his case to the U. S. District Court seeking to overturn his conviction with a writ of habeas corpus on the grounds of actual innocence, and that his constitutional due process rights were violated when he was scared into a coercive plea bargain. Both before and after his trial, Long has done incredible research to prove his innocence. He adds to his findings as he goes along and has compiled them into this memorandum.

## B. Background of Count I:

When Long's friend, Colin Winkler, came over to the house, Abney made fun of him for being gay and having HIV. He called Winkler a "fucking AIDS fag", and insinuated that he and Mr. Long were gay lovers. Abney's cruelty and arrogance incited rage in Long.

One day, shortly after this, while Long was babysitting Abney's son, the boy went into his father's bedroom and started pulling things out of his father's closet. He pulled out a hollow plastic penis that intended as a vulgar costume. Long got the idea to get back at Abney by making a video of the boy holding the plastic penis and saying 'my daddy shoves this in his butt hole." Long simply wanted to humiliate Abney for being mean to him and to his friend. Long was charged with using a child in display of sexually explicit conduct, ORS § 163.670. This count was dismissed in lieu of the plea bargain.

## C. Long's Actual Innocence Defense Against Count I

ORS § 163.670[1], says (1) A person commits the crime of using a child in a display of sexually explicit conduct if the person employs, authorizes, permits, compels or induces a child to participate or engage in sexually explicit conduct for any person to observe or to record in a visual recording.

The part of the statue applied to Mr. Long's case is section 3 clause f:
(3) Sexually explicit conduct means actual or simulated:
(f) Lewd exhibition of sexual or other intimate parts.

Lewd exhibition is the key term in the statue because according to ORS, sexually explicit conduct in cases with photographic depictions require the state to prove that a lewd exhibition of the genitals or pubic area occurred.

So, what is lewd exhibition? In State v. Meyers (1993), the Oregon Court of Appeals said "Lewd exhibition is an exhibition intended to illicit a sexual response." (State v. Meyer 1993 4) In order for the

1

state to establish lewd exhibition it must prove the defendant's intent. In this case, this means proving that Long took the pictures of the boy to sexually gratify himself.

Observation of the video, however, reveals that the boy was fully dressed and was not depicted in an unnatural pose or attire. He was not depicted *actually* using the dildo to perform any kind of sexual act. Nor was he depicted *simulating* any kind of sexual act. The boy wasn't exuding sexual coyness or willingness to engage in sexual activity, either.

In fact, in U. S. v. Dost (1986), the U. S. Court of Appeals said  "A child of very tender years, because of his innocence in matters sexual, would presumably be incapable of exuding sexual coyness. Sexual coyness is an expression outside the young child's range of experience." (U. S. v. Dost 1986 3) This clearly proves that the video was not 'focused on the boy's genitals', and therefore, does not fit into the ambit of the 'actual or simulated' clause of ORS § 163.670.

It is also notable to point out that this charge had the longest prison sentence of the two charges against Mr. Long. (5 yrs 10 months-70 months), but Judge Geyer dismissed it in lieu of the plea bargain because he knew it could not stand up in court.

## D. Background of Count II

While Mr. Long was babysitting Mr. Abney's son, he potty trained the boy. At this time, he did what parents often do with their own kids; he took photos of the toddler to cheer him on and to commemorate the child's achievement. Because the boy was depicted nude and in various positions that seemed unnatural, and because Long took many pictures, the State of Oregon claims the images demonstrate that Mr. Long posed him. He was charged with encouraging sex child sex abuse, ORS §163.684. From the beginning of the case, Long has claimed that his motivation was to potty train the boy. He has testified that regardless of how he felt about the boy's father, he was respectful to the boy and genuinely wanted to help him learn to use the potty. This shows that there is no correlation between Long's motivation in count I and his motivation in Count II.

## E. Long's Actual Innocence Defense Against Count II

The language of Oregon Revised Statues §163.684 is an important element in showing that Mr. Long never actually committed a crime. It states that:
 (1) A person commits the crime of encouraging child sexual abuse in the first degree if the person:
(a)(A) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, displays, finances, attempts to finance or sells a visual recording of sexually explicit conduct involving a child or knowingly possesses, accesses or views such a visual recording with the intent to develop, duplicate, publish, print, disseminate, exchange, display or sell it; or
(B) Knowingly brings into this state, or causes to be brought or sent into this state, for sale or distribution, a visual recording of sexually explicit conduct involving a child; and (b) Knows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse.

For the court to make a constitutional determination of sexually explicit conduct, it must first prove there was a lewd exhibition. To do this, the court must assess Mr. Long's photographs using the six standards laid out in United States of America v. Robert S. Dost, 636 F. Supp. 828 (1986)

First, Dost factor # 1, whether the focal point of the visual depiction is on the child's genitalia or pubic area. In Mr. Long's deposition taken by his trial attorney, Gig Wyatt, he explained that he photographed the potty training to cheer the boy on and encourage him to use the toilet, as well as to capture a memory of this milestone in the toddler's life.

The State of Oregon believes the photos emphasize the boy's genitals, however, none of them zoom

2

in on that part of his body to make it the focus of the depictions. Also, the lighting was not unnatural. He was not depicted with an erection and he was not holding his penis up as the focal point of the images. On the contrary, he was pushing it down to aim his stream of urine into the toilet and his hand was covering it.

In United States of America v. Robert David Villard, 885 F.2d 117, 3rd Cir. (1989), the U. S. Court of Appeals, Third Circuit evaluated depictions of a nude boy on a bed with a partial erection and said: "First is the focal point of the photographs the child's genitalia or pubic area? Feltman testified that the photographs were 'close-in' photographs, that they showed the portion of the body from the head down to the knees, and that the boy had a 'three-quarters erection.' If the photographs showed the boy's body from head to knees, they may have constituted 'close-up' photographs of the boy's body, but would not seem to constitute close-up photographs of the boy's genitals. Moreover, simply because the boy had a partial erection does not mean the erection was the focus of the photograph." (U. S. v. Villard 1989 79)

Comparing the Villard court's language to Mr. Long's case, if a boy laying nude on a bed with a partial erection does not automatically indicate that the photographs were focused on his genitals, how can the State of Oregon presume that pictures of a nude boy sitting on the toilet *without* an erection *were*? The state has departed from case law precedent to make such a determination.

Dost factor #2, looks at whether the setting of the visual depiction is sexually suggestive, i. e., in a place or pose generally associated with sexual activity. In Mr. Long's case, the State of Oregon believed the toilet setting was sexually suggestive.

However, when the Villard court evaluated depictions of a boy sleeping naked on a bed, it said: "The subject of the photographs was lying on a bed or mattress, according to Feltman. Beds and mattresses are often associated with sexual activity. They are also associated with sleeping, however, and Feltman testified that the subject had his eyes closed and looked as though he were asleep. To absolutely equate the presence of a bed or mattress with sexual activity may seem like a logical inference, but we think this linkage, in the abstract, overstates and distorts the significance of the bed or mattress. Thus, while the setting of a bed, by itself, is some evidence of lasciviousness, it alone is not enough to support a finding of lasciviousness." (U.S. v. Villard 1989 80)

Applying the Villard court's verbiage to Mr. Long's case, to absolutely equate photos of a nude boy sitting on toilet without an erection to any sexual activity may seem like a logical inference, but the language overstates and distorts the circumstances and context of the nude boy and the toilet. Also, most people don't have sex on or around their toilet. Therefore, the toilet setting of Long's photos is not sexually suggestive.

Next, Dost factor 3 seeks to determine whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child. The State of Oregon believes that Mr. Long *did* pose the boy unnaturally on the toilet to take pictures for his own sexual gratification.

First, it is important to establish what "unnatural" is. American Heritage Dictionary defines it as "Violating natural law; inconsistent with individual pattern or customs, or deviating from behavioral, or social norm." According to Webster's Dictionary, 'unnatural' is "Not being consistent with nature or consistent with normal feelings or behavior."

How does this apply to Mr. Long's case? In his deposition Long said that the boy's nudity was natural because he took off his own cloths. This begs the question: Is it natural for a two-and-a-half year old to undress himself? In the book *Your Two-Year-Old Terrible or Tender*, Louise Bates Ph. D. and Francis Ilg M. D. say "As far as dressing, the two-year-old is better at undressing than dressing. He can take off his shoes, socks and pants...At two-and a-half, most are still better at undressing than dressing." The testimonies a psychologist and a medical doctor prove that it is not a deviation from behavioral or social norm for toddlers to disrobe themselves. In fact, its quite natural.

The State of Oregon also argued that the boy's seating position on the toilet and his body language in the photos were unnatural because he had his legs spread apart with his hand covering his penis, his

body was turned, and he is even seen standing on top of the toilet seat in some pictures.

Long claimed that the boy had balance issues and had to spread his legs to avoid falling into the toilet. This is easily proven by testimony from professionals and from parents.

In *The Happiest Toddler on the Block*, Harvey Karp, M. D. says a child will often have "Unsteadiness on the toilet because her feet don't reach the ground...it's also hard to push to get poop out if your feet are dangling in the air. You try it." (Karp 269)

Is it legitimate for a child to spread a his legs to balance when he's sitting on the toilet or is this just a lie that Mr. Long made up?" In the article, Public Toilets vs Newly Potty Trained Kids, Amber Dusick says: "I help pull down her underwear to her ankles and start to plop her on the toilet, and then realize that she will just fall in if I let go. Why is her butt so tiny? This is no good. Oh, I see the problem! Her underwear can't be on both ankles because she needs to spread her legs to anchor herself and balance."

Toddler-tricks-and-tips.com tells parents to "Have your toddler sit with legs spread further apart: Many times just sitting with legs further apart on the toilet will help your toddler..." According to pediatric nurse practitioner Meg Zweiback "...It's a good idea to practice a little with balancing on the adult-size toilet, so that if you were somewhere where your child cannot get to the potty she has some experience." (Zweiback 30) Kaitlin Joy, author of the article "Potty Training Boys vs. Girls" adds "...instruct him to spread his legs apart to allow him to have a direct line into the toilet below."

Parents also agree with children spreading their legs for balance. On the online forum babycentre.com, a parent known as 'msy34' described his son's potty training. "He keeps his legs apart to balance and makes sure he is pointing down into the toilet and he holds the seat with both hands."

On another forum, called mamapedia.com, a parent identified as D. W. from Jacksonville, Florida said "When we put my boys in the potty we make sure one leg is completely out of their pants so they can straddle the potty." While discussing his daughter, "H. H." from Cinncinati, Ohio offers that "..If her legs are too tightly together, her pee will pool between her legs and then drip down."

Also, children don't have to be sitting in the front-facing position while on the toilet to balance. In *The No-Cry Potty Training Solution*, Elizabeth Pantley says "You might also try having him sit and straddle the toilet seat facing backwards." (Pantley 87) Dr. James Sears M. D. says the same thing. "If training on the adult potty, some children do better sitting backwards on the toilet and straddling it. (Teach boys to point their penises downward)." (Sears) Potty training author, Katie Warren even adds that "Children love trying different positions." (Warren 23)

Along with the accusation that the boy's legs being spread proves that Mr. Long posed him, the State of Oregon also believes the way the boy was depicted with his hand over his penis is evidence that his pose is unnatural. Long claims the reason for this was because he was teaching the boy to aim into the toilet. He is vindicated by the professional establishment.

Speaking from her nursing experience, Meg Zweiback says that, "It is better to teach a boy to push his penis down when he urinates so that he doesn't hit the floor or walls." (Zweiback 29) She adds that "A little boy can be taught to push his penis down to direct the stream of urine into the potty or toilet." (Zweiback 22).

Vicki Lansky, the author of *Toilet Training a Practical Guide to Daytime and Nighttime Training* says "Show a boy to aim his penis down to avoid spraying the room whether sitting down or standing up." (Lansky 34)  In *The Everything Potty Training Book*, Linda Sonna PhD. advises adults to "...tell him to sit down on the potty and hold his penis down into the bowel." (Sonna 99)  She follows up by stating "Show a boy how to push his penis down toward the potty bowl to keep him from spraying the room." Renowned pediatrician T. Berry Brazelton also adds that "Once he's learned to sit, then teach him how to aim by making noise in the toilet water..." (Brazelton 95)

In a statement to his attorney, Mr. Long said that he put Cheerios in the toilet for the boy to practice aiming. This gave the toddler more reason to point his penis downward. Again, Mr. Long's actions are vindicated by professional sources. Nurse practitioner Kim Bookout, D. M. P., R. N., C. P. R. N., and

4

Karen Williams, co-authors of *The Everything Guide to Potty Training* say that: "One way parents can teach their sons to aim is by creating targets in the toilet for "sinking" with the urine. This may be accomplished by sprinkling a few Cherrios in the water." (Bookout and Williams 32-33)

Dr. Mark L. Wolraich, M. D., author of the American Board of Pediatrics Guide to Potty Training suggests "Drop cereal or a few drops of food coloring in the toilet for your child to aim at." (Wolraich 53). Vicky Lanksy adds, "Teach your boy to aim accurately by having him 'sink the battleship'. Float the corner of an envelope or a piece of toilet paper and have him aim at it. (Cherrios also work for target practice and are flushable). Or float ice cubes tinted with food coloring." (Lansky 35)

Because it is completely normal for a two-year-old to disrobe himself, for him to spread his legs for balance on the toilet, and for him to point his penis into the toilet bowel, none of these things prove that Mr. Long depicted the boy in an unnatural pose.

Next, the State of Oregon said the boy's random posture in many of Mr. Long's photographs further proves that Long posed him to take sexually explicit pictures. In some of the depictions, the boy is seen with his arms in the air and his torso turned or leaning to one side. There are multiple factors that logically explain why the boy appeared that way. The first and most evident reason is that toddlers have a very difficult time sitting still.

In *Potty Training for Dummies*, Diane Stafford and Jennifer Shoquist M. D. say that "Sometimes a child seems like he's engaged, but you are surprised to find that most of his sits are non-productive. Instead, you find your toddler seems to be sitting there all but doing little more than fidgeting." (Stafford, Shoquist 104) Kaiser Permanente pediatric nurse, Helen Nelville, agrees "Alone a toddler may spend about two minutes on a single activity."

According to Dr. Brian Orr, M. D. and Donna Raskin, "The attention span of a two-year-old is a variable and is very subject to his moods." (Orr and Raskin. 76) Claudia Gold, M. D. adds that "Inability to think about feelings leads a child to to simply act them out. Children may become impulsive, which literally means acting without thinking." (Gold 149) Jennifer Soong, writer of childcare articles, also agrees. "Toddlers live in the right side of the brain, which is emotional and impulsive.

Christopher Green, M. D. explains that during potty training, the toddler "...will be easily distracted, turning toward the slightest noise and only maintaining his work performance if given great encouragement." (Green 164) Childcare authors, Heidi Murkoff and Sharon Mazel have also made the same observation. "Spending more than a few minutes on one activity-except maybe sleep-is way too challenging for a young easily distracted toddler." (Murkoff and Mazel 297)

According to Maggie McCormick, for toddlers, "Its hard to focus on the potty when there are so many other attractive options waiting in the toy room." Occupational therapist Loren Shlaes suggest toddlers attention problem may be because they get bored. In *The No-Cry Potty Training Solution* Elizabeth Pantley agrees. "Often it takes too long and they get bored, so they begin to look around around-and the body follows their eyes and head." (Pantley 140) All of this explains why the boy was depicted in Mr. Long's photos squirming around while on the toilet.

Another reason why child squirm around during potty training is because they engage in power struggles. This also happened while Mr. Long was trying to potty train the boy. Ann Krueger says that adults should "Recognize using the potty for what it really is: part of your child's struggle for autonomy." (Krueger 47)

Charles E. Shaefer, PhD and Theresa Foy DiGeronimo have observed that "Many children who are resistant to toilet training regard toileting as the one aspect of their lives over which they have total control." (Shaefer and DiGeronimo 125) The child's stubbornness can become a barrier. "When parents try taking control of a child's bodily functions, they can often be met with resistance." (Nelson et. al 248) Christopher Green M. D. explains that "The process is controlled by the child's will to comply or his determination to defy, which in turn, is dependent on the child's temperament." (Green 110)

Green continues, "As the toddler is developing self-control, he soon discovers that he can exercise quite a bit of control over others. All that needs to be done is dig in the heels, flex the muscles, and watch the amazing effect it has on everyone around." (Green 6) Dr. Wolraich contributes that a child's stubbornness during potty training can also be due to anxiety and fear about using the toilet. (Wolraich 129-130)

Next, the State of Oregon also said that the boy standing on the toilet seat in other images demonstrated that Mr. Long posed him. However, according to Dr. Mark Wolraich, standing is a natural behavior for toddlers learning to use the toilet. Wolraich says "Standing for a bowel movement is a common habit for children who are used to defecating in their diaper, while standing. Trying to poop while sitting probably feels uncomfortable to your child." (Wolraich 88-89) Dr. Green remarks that "This bad habit may be due to pure stubbornness, being too busy to spare time, to fear of toilets, or pain trying to move constipated bowels." (Green 118)

In the toilet training book, *Mommy I Have to Go Potty A Parents Guide to Potty Training*, Jan Faull offers that, "Some boys want to stand up just like Dad or big brother. Some begin by sitting down and push their penises down into the toilet so their pee hits the toilet bowel rather than the floor. You must demonstrate this to your son." (Faull 36) *The Complete Guide to Potty Training*, by Melanie Williamson relates that "If your child is newly potty trained or strong-willed he may refuse to pee sitting down, which can lead to accidents." (Williamson 45)

Whether toddlers are squirmy because they have a short attention span, are bored, power struggling, it is not unnatural for a them to wiggle around. According to doctors and childcare experts, it is also normal for them to want to stand during potty training, Therefore, none of these elements in Mr. Long's pictures prove that he posed the boy to take sexually explicit images.

Moving on, the next Dost factor is # 4, whether the child is fully or partially clothed, or nude. The State of Oregon believes that the boy's nudity in the images taken by Long is evidence of lewd exhibition, and that he was taking the pictures to illicit a sexual response in himself.

First, a look at some legal precedent on the subject of nudity proves a clearer perspective of the issue. In State of Oregon v. Johnny Lee Evans, 37 P.3d 272 (2001), the Oregon Court of Appeals looked at a case where a man was dancing nude with his step daughter: "..a jury could find that defendant's acts of dancing nude with M. and the pressing of his genitals against her body while she was unclothed and her genitals were exposed satisfies the statutory definition for "sexually explicit conduct." (State v. Evans 2001 7)

The court did not find Evans guilty merely on account of he and his step-daughter being nude, but rather because he danced and rubbed his genitals against her while they were both nude. It is also fair to note that the Evans court did not implore any standard to determine that a lewd exhibition occurred. It unconstitutionally jumped to presuming sexually explicit conduct without using Dost or any other standard of measure.

In Shoemaker v. Taylor, No. 11-56476 (9th Cir. 2013), the U. S. Court of Appeals said that "The Supreme Court has clearly established that not all images of nude children amount to child pornography because "nudity, without more[,] is protected expression." New York v. Ferber, 458 U. S. 747, 765 n.18 (1982); see also Osborne v. Ohio, 495 U. S. 103, 112 (1990). "For example, a family snapshot of a nude child bathing presumably would not be criminal." United States v. Hill, 459 F.3d 966, 970 (9th Cir.2006)." (Shoemaker v. Taylor 2013 5).

According to the Villard court "A naked boy lying in bed with a partial erection, appearing to be asleep, with his knees "bent slightly upwards," might strike some minds as being a "natural" pose as much as an "unnatural" one." (U. S. v. Villard 1989 82) In United States of America v. Rudy Frabizio, 463 F. Supp.2d 11 (2006), the U. S. Court of Appeals added that: "A picture of a nude child is more likely to be harmful to the child when the depicted child is an adolescent or prepubescent rather than an infant. This is not because infants are beyond the perverse interests of pedophiles, but because nude

6

pictures of infants are so widely approved in our culture that such pictures are less likely to cause harm to the child." (U.S. v. Frabizio 2006 11)

In "United States of America. v. Knox" (1994). 1994 *Decisions*. 41., the court said that "No one seriously could think that a Renoir painting of a naked woman or an innocuous family snapshot of a naked child in a bathtub violates the child pornography laws. Nudity must be coupled with other circumstances to make the visual depiction lascivious or provocative in order to fall within the parameters of the statue." (U.S. v. Knox 1994 24-25) This goes for pictures of a child on a toilet as well. This legal precedent proves that an image of a nude child sitting on the toilet, without more, does not amount to lewd exhibition or child pornography.

What about TV shows such as Naked and Afraid on the Discovery Channel, Buying Naked on TLC, or Dating Naked on VH1? Can it be said that those shows contain lascivious exhibitions, even if they aren't designed to provoke a sexual response? And if the people on those shows spread their legs or push their penises downward when they urinate, does that make them lascivious?

In Mr. Long's photos, the boy being portrayed using the toilet is an ordinary activity in an unremarkable setting, and the visibility of the boys genitals is merely an inherent aspect of the fact that he is naked. The images were no more lascivious than National Geographic photos, medical textbook pictures, or works of art because a toddler's natural, age-appropriate behavior while nude does not amount to lasciviousness. Nor does it prove that Long was trying to illicit a sexual response. Therefore, the depictions of the boy are not lewd exhibitions, and do not fit into the ambit of 'sexually explicit conduct' according to Oregon Revised Statues. The State of Oregon's suspicions about Mr. Long remain completely unsubstantiated.

The fifth Dost factor for measuring lewd/lascivious exhibition seeks to determine whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity. Based on the outward appearance of the boy's posture in Mr. Long's photos, the State of Oregon claimed that he *did* depict the toddler exuding sexual coyness.

However, the same quote from U. S. v. Dost that applied to count I also applies here. "Because of the sexual innocence of children, that which constitutes a "lascivious exhibition"of a child's genitals will be different from that of a "lascivious or lewd exhibition" of an adult's genitals. For example, Judge Miller in Nemuras referred to the sexual coyness of the visual depiction. A child of very tender years, because of his innocence in matters sexual, would presumably be incapable of exuding sexual coyness. Sexual coyness is an expression outside the young child's range of experience." (U.S. v. Dost 1986 3) Additionally, in United States of America v. Alan Lee Amirault, 224 F.3d 9 (1st Cir. 1999), the U. S. Court of Appeals, First Circuit said "Coyness is a relatively vague and subjective term." (U.S. v. Amirault 1999 5) This makes it unconstitutional.

If a child is incapable of exuding sexual coyness it is not possible for the boy depicted in Mr. Long's photos to do so, and an overwhelming amount of evidence proves that nothing else about the photos give them a sexual context. It is irresponsible for the State of Oregon to come to this conclusion based on its deliberate decision to ignore case law.

The sixth and final Dost factor determines whether the visual depiction is intended or designed to elicit a sexual response in the viewer. This is theoretically determined by whether or not the other five factors are met (collectively), although no court has ever been able to quantify how many of the factors need to be met in order to make the determination. This is a badly unconstitutional practice still used by courts, today.

The only Dost factor that can be established in Mr. Long's photos is factor # 4, nudity. However, as the Villard, Knox and Shoemaker courts all said, nudity alone is *not* sufficient to determine lewd/lascivious exhibition. Therefore, there are no aspects of *any* of Long's images that prove he took them to illicit a sexual response. Without that, they cannot be deemed lewd exhibitions or be part of the definition of sexually explicit conduct according to Oregon Revised Statues.

7

So, what was Long's motivation for taking pictures of the boy on the toilet and why did he take so many? As stated above, Mr. Long said he was using photography to praise and encourage the boy to use the potty, and was taking pictures to celebrate his achievement. He stated that he was planning to give the photos to the boy's father.

Experts say that giving a child praise during potty training is not only valid, it's important. Dr. Wolraich says "Like a coach encouraging a player to perform well, your goal is not to control her learning process by constantly directing her, but to spot her by making suggestions when necessary and cheering her on. One of the strongest motivating forces for pre-schoolers mastering a new skill is his parents praise." (Wolraich 96)

Vicki Lansky points out that child experts, such as Benjamin Spock, M. D., T. Berry Brazelton, M. D., William Sears, M. D., and Penelope Leach, PhD. "..advocate rewarding success with flattery and praise." (Lansky 45) Linda Sonna PhD, says "Help your child recognize that sitting is something he can do by praising him regularly for staying seated." (Sonna 36)

Lastly, how does Mr. Long account for taking a large number of pictures, a fact which the State of Oregon believes is further proof that he took them to sexual gratify himself? Before trial, Mr. Long stated in a deposition to his attorney, Gig Wyatt, that he was an amateur photographer and that taking a lot of pictures was how he got a few good ones despite the challenge of a subject who wouldn't sit still. Of course, the state believed this was a lie.

However, in *Digital Images in a Snap* authors Ian Cope and Peter Cope state that continuous shooting, "...allows you to shoot up to five photographs in very quick succession. This is particularly useful when photographing moving objects." (Cope and Cope 61)

According to Tom and Michelle Grimm, authors of *The Basics of Digital Photography*, "The obvious reason to set a camera for continuous shooting is to capture fast or unpredictable actions that you might otherwise miss...you'll have a series of shots from which to choose the best instead of just a single exposure. (Grimm and Grimm 191)

Professional photographer, Chris George also agrees with his colleagues."Continuous shooting provides a sequence that gives a better overall view of a moving subject than a single shot, or can help to provide a variety of shots to choose from." (George 66)

The total sum of research and testimonies from medical professionals, childcare experts, and experienced parents proves that there is nothing about the photographs of the boy taken by Mr. Long that proves he was depicting a lewd exhibition or sexually explicit conduct. The testimony from professional photographers proves that it is perfectly normal to take a lot of pictures just to get a few good ones. This is *all* Long was doing.

In addition to all the other exculpatory evidence, Mr. Long has passed two polygraphs since he was charged with these crimes. The first one was a general polygraph before his trial and the second was a full-disclosure sex offender polygraph. Although polygraphs are not admissible in court, this still compliments the evidence that screams "He's innocent!".

## II. LONG'S CONSTITUTIONAL DEFENSE

The Marion County Circuit Court violated Long's constitutional rights at trial by scaring him into accepting a plea bargain out of fear before the court had heard his defense. This is evidenced by notes in the court record and by the absence of the defense in that record.

The defense had barely started to be presented when the court adjourned for lunch. Only one defense witness had testified. During that break, Circuit Court judge, Courtland Geyer, met with Long's attorney and told him "I'm going to convict him. Tell him to take a pleas bargain." The way Long understood it, the judge was saying that he was going to convict him no matter what. This pressured Long into taking the plea bargain out of fear of being sent to prison. Long was robbed of his

8

opportunity to defend himself. He never would have accepted it if he hadn't been made to feel that he had no choice.

As a point of comparison to Long's case, in State of Oregon v. Peter John Zielinski, OR. App. A155888 (2017), Mr. Zielinski was tried for murdering his wife. He accepted a plea bargain. He later appealed the conviction, claiming there was evidence the trial court had set aside. The Oregon Court of Appeals ruled that the trial court erred in excluding expert testimony of Zielinski's anxiety disorder diagnosis. Mr. Long's case has similar circumstances. Without the defense being mounted, there was a lack of information and a lack of due process. However, Judge Geyer prematurely rushed to judgment and decided Long was guilty. Then, Geyer pressured him to take a plea bargain. In Zielinski and Long, information not given a chance to be heard impeded justice. Zielinkski's case provides case law precedent to the unconstitutionality of the Marion County Circuit Court's actions.

Judge Geyer terrified Long into taking the plea, however the Oregon Judicial Code JR 2-102a states, "A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, full right to be heard according to law."

The Fifth and Eighth Amendments of the United States Constitution say almost exactly the same thing, that no State shall deprive any person of life, liberty or property without due process of law.

Oregon Constitution Bill of Rights Article I Section 10 says that, "No court shall be secret, but justice shall be administered openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him, his person, property or reputation." Article I section 23 adds, "The privilege of habeas corpus shall not be suspended unless in cases of rebellion, or invasion, as public safety requires."

It is an indisputable violation of due process for a state to enforce a judgment against a person without the person having the opportunity to be heard before final judgment is entered. (Postal Telegraph Cable Co. v. Newport, 247 U. S. 464, 476 (1918); Baker v. Baker, Eccles & Company (Co.)., 242 U. S. 294, 403 (1917); Louisville & Nashville R. R. v.  Schmidt, 177 U. S. 230, 236 (1900)).

According to the American Bar Association Standards for Criminal Justice, "A judge should never through word or demeanor, either directly or indirectly communicate to the defendant or defense council that a plea agreement should be accepted or that a guilty plea should be entered. Ohio State Law Journal Vol. 76.3 593 (People v. Weaver, 118 Cal. App. 4Th 131, 147-48 (Cal. Ct App. 2004)

No matter how one looks at it. Geyer robbed Long of his constitutional rights and of justice. There was no just cause for this unethical behavior. This begs the question: what good is the constitution and what good are guaranteed constitutional rights if our courts don't uphold them?.

## II. CONCLUSION

The Marion County Circuit Court violated Mr. Long's constitutional rights, then wrongfully convicted him. To publicly label an innocent man a sex offender is fundamentally unfair and is one of the cruelest things someone can do to another human being. Long does not deserve that. Nor does he deserve the emotional pain and degradation, the inability to find gainful employment, or the loss of self-esteem. Long has recently finished his Master's degree and needs a job that uses his credentials.

In the best interest of justice, Mr. Long respectfully requests that the United States District Court reverse his conviction so he may be allowed to live free again and enjoy the life, liberty and good standing in the community. With that Mr. Long also requests all court records be destroyed, including data and mugshots on the state sex offender database, the Circuit Court files, including briefs and decisions from all courts.

Lastly, because the evidence proving his innocence is so strong, Mr. Long also requests that the District Court bar the Marion County Circuit Court from taking this case back to trial, as it would be a tremendous waste of government time and money. Mr. Long is innocent and deserves his life back.

BIBLIOGRAPHY

American Bar Association. <u>Standards for Criminal Justice.</u> Chicago, IL: ABA Press, 2007. Print

Bates, Louise, Ph. D. and Francis Ilg M.D.  <u>Your Two-Year-Old Terrible or Tender</u>.  New York, N. Y.

    Bantam Doubleday Dell Publishing Group, Inc, 1976.

Bookout, Kim D.M.P, R.N., C.P.R.N. <u>The Everything Guide to Potty Training</u>. Avon, MA: Adams

    Media, a division of Ft. W. Media Inc., 2010. Print.

Brazelton, T. Berry, M. D., and Joshua Sparrow, M. D., <u>Potty Training the Brazelton Way</u>."

    Philadelphia, PA: Da Capo Press, 2004. Print.

Constitution of Oregon, Bill of Rights.

Constitution of the United States, Fifth Amendment.

Constitution of the United States, Eighth Amendment.

Dusick, Amber "Public Toilets vs Newly Potty Trained Kids." N.p. Huffingtonpost.com.  Web. 6 Dec

    2001. <<u>http://www.huffingtonpost.com/amber-dusick/potty-training-public-toilets_b_1123409.html</u>>

Faull, Jan, M.Ed. <u>Mommy I Have to Go Potty A Parents Guide to Potty Training</u>.  Hemet, CA:

    Raefield-Roberts Publishers, 1996. Print

George, Chris. <u>Digital Photography</u>. Philadelphia, PA: Running Press, 2006. Print.

Gold, Claudia, M. D., <u>Keeping Your Child in Mind.</u> Philadelphia, PA: Da Copo Press, 2011. Print.

Grimm, Tom and Michelle Grimm. <u>The Basics of Digital Photography</u>. New York, NY: Penguin Books,

    2001. Print.

"Helping Boys aim into the Toilet." N. p. toddler-tricks-and-tips.com. Web 25 Aug 2015

    <<u>http://www.toddler-tricks-and-tips.com/aim-in-toilet.htm</u>>

Joy, Kaitlin "Potty Training Boys vs. Girls." N.p. thebabycorner.com. Web 8 Aug 2012

    <<u>http://www.thebabycorner.com/page/2826/</u>>

Karp, Harvey, M. D. <u>The Happiest Toddler on the Block</u>.  New York, N.Y. Bantam Books a division of

    Random House (Year). Print.

10

Krueger, Ann. Parenting Guide to Potty Training. New York, NY: Balantine Books, 2001. Print

Lansky, Vicki. *Toilet Training a Practical Guide to Daytime and Nighttime Training*. New York, NY:

   Bantam Books, 2004. Print.

Nelson, Jane, Ed. D., Cheryl Erwin, M. A., and Roslyn Duffy. Positive Discipline for Preschoolers.

   New York, NY. Three Rivers Press. 2007. Print.

Nelville, Helen F. B.S., R.N., 'Is this a phase?" parenting press.com Web. 24 June 2014.

     <http://www.parentingpress.com/media/is-this-a-phase_excerpt2.html

Murkoff, Heidi and Sharon Mazel. What to Expect in the Second Year. New York, NY: Workman

   Publishing, 2011. Print.

Online forum. Babycentre.com. Posting. N.p. Web. 19 Aug 2010. <http://community.babycentre.co.uk/

   post/a9377015/potty-to-toilet >

Or. Rev. Stat. §163.670 (2013)

Or. Rev. Stat. § 163.684 (2013)

Oregon Judicial Code. Web. Oregon Judicial Department. 2013. <www.osbar.org/rulesregs/>

Orr, Brian, M. D. and Donna Raskin. The Everything Guide to Raising a Two-Year-Old. Avon, MA:

   Adams Media, 2007. Print.

Pantley, Elizabeth. The No-Cry Potty Training Solution. New York, NY: Better Beginnings Inc, 2007.

   Print.

Sears, James M., M.D. "21 toilet training tactics." askdrsears.com  N.p. Web. 22 Oct 2004.

     <http://www.ask.drsears.com>

Shaefer, Charles E. PhD and Theresa Foy DiGeronimo. Toilet Training Without Tears. New York, NY:

   Signet. 1997. Print.

Shoemaker v. Taylor, No. 11-56476 (9th Cir. 213)

Soong, Jennifer. "The Crazy Things Toddlers Do." *Webmd.com*, Ed. Anita Shroff. N. p. n .d. Web. 14

   Aug. 2014. <www.webmd.com/parenting/features/thecrazythingstoddlersdo>.

Sonna, Linda. Early Start Potty Training. Avon, MA: Adams Media, 2005. Print.

Sonna, Linda. The Everything Potty Training Book. Avon, MA: Adams Media, 2003. Print.

Shoemaker v. Taylor, No.11-56476 (9th Cir. 2013)

Stafford, Diane and Jennifer Shoquist M.D.  Potty Training for Dummies.  New York. N. Y. Hungry
    Minds. 2002.

State of Oregon v. Johnny Lee Evans, 37 P.3d 272 (2001)

State of Oregon v. Meyer, 852 P.2d 879 (1993)

State of Oregon v. Peter John Zielinski, OR. App. A155888 (2017)

"Unnatural." American Heritage Dictionary.  2nd. ed. 1982.

"Unnatural."  Webster's New World Dictionary. 2nd. ed. 1980.

United States of America v. Alan Lee Amirault, 224 F.3d 9 (1st Cir. 1999)

United States of America v. Robert S. Dost, 636 F. Supp. 828 (1986)

United States of America v. Rudy Frabizio, 463 F. Supp.2d 11 (2006)

"United States of America. v. Knox" (1994). 1994 Decisions. 41.

United States of America v. Robert David Villard, 885 F.2d 117, 3rd Cir. (1989)

Warren, Katie. Potty Training Your Baby. Garden City, NY: Square One Publishers, 2006. Print.

Williamson, Melanie.  The Complete Guide to Potty Training Children. Ocala, Fl: Atlantic Publishing
    Group. 2013. Print.

Wolraich, Mark L. M.D., American Board of Pediatrics Guide to Potty Training. New York, N. Y:
    Bandom Bell, a division of Random House Inc., 2003. Print.

Zweiback, Meg R. N. C. P. N. P., M. H. P.  Keys to Potty Training. Second ed. Hauppauge, N. Y:
    Barrons Educational Series, 2008.

## CERTIFICATE OF SERVICE

I, David Long, certify that on October 10, 2018, I caused the foregoing document to be served by hand-delivery to the United States District Court clerk in Portland, Oregon, 97204.

_____
David Long

## DECLARATION UNDER PENALTY OF PERJURY

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

10-10-18
_____       _____
Date                            Signature of petitioner

David Long
PO Box 13856
Salem, OR 97309
(971) 388-5663

13